Luke A. Wake, Cal. Bar No. 264647*
Damien M. Schiff, Cal. Bar No. 235101**
Jeffrey W. McCoy, Cal. Bar No. 317377**
Charles Yates, Cal. Bar No. 327704**
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
LWake@pacificlegal.org
DSchiff@pacificlegal.org
JMcCoy@pacificlegal.org
CYates@pacificlegal.org
   *Admitted Pro Hac Vice
   **Pro Hac Vice Pending

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| INSIDE PASSAGE ELECTRIC COOPERATIVE and ALASKA POWER ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF AGRICULTURE; and TOM VILSACK, in his official capacity as U.S. Secretary of Agriculture,<br><br>Defendants. | Case No. _____ |

## DECLARATION OF CLAY KOPLIN

I, Clay Koplin, declare that:

1. I make this statement of my own personal knowledge and if called to testify, could and would testify truthfully thereto.

2. I am a resident of Cordova, Alaska, and the Chief Executive Officer for the Cordova Electric Cooperative ("CEC").

3. CEC is a non-profit, consumer owned and governed electric utility (i.e., an "electric cooperative") that operates a microgrid serving the community of Cordova. CEC is a member of the Alaska Power Association.

4. Because Cordova is an isolated community, the residents of Cordova are dependent on the power that we generate.

5. While we are currently meeting our community's needs, we anticipate that CEC will need to generate more electricity to meet consumer demand going forward—including increased demand for electricity as consumers transition to electric vehicles and air source heat pumps.

6. We have made strides to develop renewable energy projects where possible. For example, in partnership with the Eyak Corporation (a native corporation), we have developed a hydroelectric project that currently provides 2/3rds of our community's electricity—and which offsets over 1,100,000 gallons of diesel fuel use annually.

7. But CEC has limited opportunities to improve our energy infrastructure without road access into the Chugach National Forest. For example, I have identified a site for a potential hydroelectric project that is only a fraction of a mile into the Chugach. This would be a very simple project, and one that CEC would pursue, or to at least consider. But CEC cannot justify

expending resources in pursuit of such a project with the U.S. Department of Agriculture's Roadless Rule in place because road access is essential for construction and maintenance.

8. In addition, CEC has assessed six other potential sites for hydroelectric projects. But five out of those six would require road access through the Chugach Forest.

9. When considering developing a hydroelectric project, CEC must consider a myriad of factors. But we know that a rule prohibiting road construction renders such small hydroelectric projects economically infeasible.

10. As such, the Roadless Rule destroys the marginal feasibility of these sorts of projects because it is exponentially more expensive to construct hydroelectric projects without road access. And, in some cases, it is logistically impossible to transport the heavy equipment needed to these remote sites without road access.

11. We know that road access is essential because CEC has run the numbers on projects both with and without road access. For example, in the late 2000s, CEC needed to rebuild a hydroelectric project that was destroyed by flooding. It was unclear at the outset whether we could build a road. But we were able to move forward in partnership with a native corporation, which agreed to a lease allowing road access. This enabled CEC to construct a road

at a cost of roughly $500,000—which was $4 million less than the cost of construction by helicopter.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Executed on the 6th day of September, 2023, at Cordova, Alaska.

_____
CLAY KOPLIN